ARCHER & GREINER
A Professional Corporation
One Centennial Square, East Euclid Avenue
Haddonfield, NJ 08033-0968
(856) 795-2121
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AL FALAH CENTER, TAREK ABDELKADER, YASSER ABDELKADER, ZAHID CHUGHTAI, BABAR FAROOQI, NABEELA FAROOQI, AYESHA KHAN, AMINA MOHAMMEDI, OMAR MOHAMMEDI, and SARA WALLIS,<br><br>Plaintiffs,<br><br>- against -<br><br>TOWNSHIP OF BRIDGEWATER; TOWNSHIP OF BRIDGEWATER PLANNING BOARD; PATRICIA FLANNERY, in her capacity as MAYOR of the TOWNSHIP OF BRIDGEWATER; ALAN FROSS, STEPHEN RODZINAK, BARBARA KANE, JOANNE KANE, N. JANINE DICKEY, ROBERT ALBANO, and GLENN PETILLO, in their capacity as members of THE TOWNSHIP OF BRIDGEWATER PLANNING BOARD; the TOWNSHIP COUNCIL OF THE TOWNSHIP OF BRIDGEWATER; and HOWARD NORGALIS, DAN HAYES, ALLEN KURDYLA, MATTHEW MOENCH, AND CHRISTINE HENDERSON ROSE, in their capacity as members of the TOWNSHIP COUNCIL OF THE TOWNSHIP OF BRIDGEWATER,<br><br>Defendants. | Civil Action No. 3:11-cv-02397-JAP-LHG<br><br>DECLARATION |

**DECLARATION OF ZAHID CHUGHTAI**

Zahid Chughtai declares as follows:

1. I am a Plaintiff in this action. I make this declaration based on my personal knowledge.

2. I have lived in Bedminster, New Jersey with my family since 1988. I hold a degree in mechanical engineering from Bombay University, and a masters in industrial engineering with a concentration in packaging science from Rutgers University. I own a packaging consulting business based in Bedminster, NJ that I founded in 1991 and which currently employs approximately 50 employees. I became an American citizen about 23 years ago.

3. I am also a practicing Muslim and a Board Member of the Al Falah Center, a non-profit corporation organized under the laws of the State of New Jersey and proponent of the proposed mosque and Islamic community center at issue in this litigation. I am also a member of the Board of the Chughtai Foundation, a non-profit corporation organized under the laws of the State of New Jersey that is dedicated to charitable and religious works, and applicant before the Township Planning Board on behalf of the proposed Al Falah mosque.

4. As a practicing Muslim, I understand that the Qur'an enjoins Muslims to pray five times a day together. I try to make time for daily prayers as often as I can. Currently, I typically offer my daily prayer sessions at my office, and attend Friday communal prayer services in Bridgewater. Since 1988, I have travelled throughout the Bridgewater and surrounding areas to attend daily prayer sessions that have been held in various rented spaces, most recently spaces rented by the Islamic Center of Basking Ridge ("ICBR") or by the Muslim Center of Somerset County ("MCSC"). Neither group has a permanent house of worship for Muslim prayers and community gatherings, and neither holds prayers at a centrally located facility. Both are approximately a 20 minute drive in opposite directions from where I am located. For me, the

distance to each of the prayer session locations makes it difficult to participate in all of the daily prayers every day. Daily prayers are held at the Somerville Masjid, which is a 15 minute drive.

5. Over the past ten years or so, I have been working with others to try to find a permanent home for a mosque and community center for the Bridgewater area Muslim community. A mosque, such as the one we wish to renovate the Redwood Inn property to become, serves as the cornerstone of Muslim faith and community. It is a place of communal prayer. The Qur'an enjoins Muslims to come together in prayer five times a day each day. Friday is the Muslim holy day, and the Friday noon prayer is the most important communal prayer. Special communal prayers also take place in the evenings during the fasting month of Ramadan, and prayer services are an essential part of the twice-yearly Eid Holiday celebrations. Communal prayers are also observed as part of Islamic funeral services. The mosque is not only a house of worship; it is also a most critical institution through which Muslims educate themselves and their children in the tenets and practice of Islam. The mosque serves as the focus for the community's social, educational, and recreational activities. It also provides a place for people curious about the religion, and for all believers, including children and adults to learn about Islam from a knowledgeable and reputable source.

6. I have been working to find a suitable mosque location precisely because it would fulfill many of the needs of our local Muslim community, which at present is effectively "religiously homeless." Because the local Muslim community relies on using rented prayer facilities, it has been difficult to live an Islamic life, and to provide our fellow Muslims, children and grandchildren with a home for our faith community and the services that we would like to provide.

7. Along with others from the ICBR and the MCSC, I have participated in searches for area properties that were for sale and might have been suitable homes for a mosque and Islamic community center. Although there have been several candidate properties that might have been a suitable mosque location, we have not yet succeeded in establishing a mosque in the Bridgewater, Basking Ridge or general Somerset County area for various reasons, including issues arising with various potential sites like unanticipated environmental remediation obligations, and our inability to reach agreement with the sellers on important terms, including price. MCSC tried to convert a house into a mosque approximately five years ago, but that effort failed because the house failed to meet the zoning requirements, including that it had insufficient setbacks, insufficient available parking and an insufficient lot size. Efforts to obtain variances failed. The Boards of MCSC and ICBR led the effort to look at alternative mosque sites. There was another site in Bridgewater that did not work out because of complications arising from wetlands running through the site. In addition, many of the properties that come up for sale in more commercial zones are cost prohibitive.

8. In or about March or April 2010, I learned that the Redwood Inn was up for sale. From my perspective, it is the perfect location for a mosque to serve the local Muslim community. The Redwood Inn is located on a 7.64 acre parcel of land. It is ideal because it is located in Bridgewater. The facility has over 15,000 square feet of space, plenty of room, approximately 230 parking spaces, and was available for a reasonable price. In addition, the Redwood Inn was formerly operated as a banquet hall; the MCSC had previously rented the Redwood Inn for several years for our two largest holidays -- Eid ul-Fitr and Eid ul-Adha. I attended several of those celebrations. During those holidays, we held prayer sessions with several hundred participants at the Redwood Inn. I understand that some of the Eid participants

drove as far as an hour-and-a-half to attend the prayer services because there were no other available locations for the Eid prayers nearby. We were able to gather for our biggest holidays at that very site. I never heard of any problems or complaints regarding the gatherings. I never learned of any community complaints about the Eid celebrations. As practicing Muslims, we do not consume alcohol, so our religious holidays are not associated with any alcohol use, unlike other events that I understand have been held at the Redwood Inn.

9. Several of the members of the present Al Falah Center board, including Tarek Abdelkader, Omar Mohammedi, Sara Wallis, Babar Farooqi and others, had been involved with me in efforts to locate a suitable mosque property over the past several years. We decided that the Redwood Inn property was what we had been looking for, and decided to form a new religious not-for-profit entity to establish the mosque. Because the Redwood Inn was such a valuable opportunity, the Chughtai Foundation directors agreed to enter a contract to purchase the Redwood Inn property until the Foundation's rights under the contract could be assigned to the new not-for profit entity that was being formed to renovate the building and own and run the mosque. The Chughtai Foundation negotiated and signed a contract to purchase the Redwood Inn property from the seller, with a right to assign the purchase contract to the anticipated not-for-profit entity that was being formed for the purpose of establishing the mosque.

10. During this same time period, a group of individuals from the Muslim community began holding Friday prayers at a local hall. Approximately 100 people regularly come to these scheduled Friday communal prayer sessions. The board members of the Al Falah Center, which was incorporated in November 2010, are among those who participate in these local Friday prayer sessions. As of April 2011, the Chughtai Foundation's right to purchase the Redwood Inn property was assigned to the Al Falah Center.

11. The Chughtai Foundation retained Lloyd Tubman of Archer & Greiner P.C. to advise and assist in preparing a preliminary site plan application to renovate the Redwood Inn into a mosque and community center. We also retained engineers and other experts to assist with preparing the application.

12. On January 6, 2011, the Foundation submitted the preliminary site plan application for the Al Falah Mosque to the Planning Board. The submission included (1) site plans, (2) an environmental impact statement, (3) a traffic impact analysis prepared by a traffic engineering firm, (4) landscaping plans, (5) architectural plans, (6) a stormwater report, and (7) all necessary forms and fees. The Application stated that Al Falah would use the Property as a house of worship, or mosque, for daily and weekly prayers, holiday services, a day care center, weekend religious education class, a full-time religious elementary school and community services and activities. [The full-time religious elementary school aspect of the application was subsequently withdrawn.]

13. The Foundation and Al Falah went to great lengths and incurred approximately $200,000 in professional fees and other costs in order to ensure that the materials submitted with the Application demonstrated that the intended use of the Property would comply with all applicable zoning and land use regulations. On or about January 10, 2011, the Town Planner indicated that the application was scheduled for a public hearing on January 24, 2011.

14. On January 18, 2011, I (along with Omar Mohammedi, Lloyd Tubman (our attorney), David Stires (our engineer), Ralph Fanelli (our architect)) met with the Township Planner, Ms. Doyle, the Township Engineer, Mr. Forsythe, and Gordon Meth, the Planning Board's traffic consultant to discuss the Township's comments on the Foundation's preliminary site plan

application. At no time during this meeting did the Bridgewater representatives raise as a potential concern the possibility of increased traffic in the area surrounding the Property.

15. The Al Falah mosque application was scheduled to be heard at the Planning Board meeting on January 24, 2011 at the Bridgewater Township administrative office. I attended that Planning Board meeting with Lloyd Tubman as our counsel. Because the discussions with the Township's representatives had not raised any significant issues, we anticipated that the preliminary site plan application would make substantial progress toward approval at the January 24 Planning Board meeting. We brought our engineering consultants, our architect, and our landscape architect to present testimony to the Planning Board that day.

16. However, when we arrived at the meeting, there were many more people present than we had anticipated. There were police officers in the parking lot and at the entrance to the meeting room. The entire meeting room was full, and one of the Planning Board officials made repeated announcements that people who could not enter the meeting room should sit in a side room that had a TV monitor displaying the meeting in the main meeting room. Eventually the Planning Board official announced that the side room and the lobby had filled up as well, and that people were being turned away at the entrance. I read in the newspapers afterward that approximately 400 to 450 people had attended.

17. It appeared to me that the gathered crowd was almost entirely opposed to the mosque application. Approximately seven or eight supporters from the Al Falah Center attended. The rest of the crowd were people who were not familiar to me. They were all seated before we arrived. There was nowhere for Ms. Tubman and me to sit. We had to stand along the wall. The atmosphere was very intimidating. There were many more people in attendance than we expected. There were many unfriendly looks from people in the audience. The Planning Board

did not consider the Al Falah mosque application that evening, and instead adjourned the meeting on the application until such time as a larger hall could be made available. During the January 24 meeting, I heard one person in attendance say to the Planning Board members, "I hope you got the message from this crowd" as the board adjourned the meeting.

18. I was unable to attend the February 8 Planning Board and February 17 Township Council meetings as I was travelling.

19. I attended the February 28, 2011 meeting of the Planning Board at the Bridgewater Vocational-Technical school. I understood that the Al Falah mosque proposal was to be heard, in addition to an ordinance to deny conditional use status to houses of worship in residential zones except in specified locations (Ordinance 11-03). During that meeting, I observed that the hall was full. I observed that there were people in the hallways waiting to enter the auditorium who could not get in. I read in the newspaper afterwards that approximately 600-650 people had attended. Many people lined up to oppose the mosque application and spoke against it. Many who spoke against the mosque proposal received a lot of cheers and clapping from the crowd. I did not observe any supporters of the mosque trying to boo, make noise during or drown out the comments of people who spoke out against the mosque. The opposite is not true. When people spoke in favor of the mosque application, there were a lot of boos and catcalls from the crowd, who tried to drown out some of the speakers. In particular, I observed that when Dr. Siddiq spoke in favor of the mosque and made comments about freedom, liberty and justice being for everyone, including Muslims, the crowd tried to drown him out. I estimate that there were four or five people who spoke in opposition to the mosque for every one person who spoke in favor of the mosque.

20. I attended the March 14, 2011 meeting of the Township Council at the Bridgewater High School. I understood the Town Council was supposed to address proposed Ordinance 11-03 at that meeting. I have read that the hall's capacity was 650 people, and during that meeting, I observed that it was almost full. Although the Township Council hearing was supposed to be about Ordinance 11-03, many people spoke in opposition to the mosque application specifically rather than the general issue discussed by the proposed ordinance. Many who spoke against the mosque proposal received lots of cheers and clapping from the crowd; when people spoke in favor of the mosque application, there were a lot of boos and catcalls from the crowd. As compared to the February 28 meeting, the atmosphere was less tense that it had been at the February 28 meeting. The opponents of the mosque appeared confident that the ordinance would be approved.

21. At the March 14 meeting, the Township Council voted to adopt the proposed Ordinance 11-03.

22. Based on the above, I am deeply concerned that irrational anti-Muslim prejudices have affected the Planning Board and the Town Council in their reactions to the Al Falah mosque application.

23. Our contract to purchase the Redwood Inn must close by October 5, 2011. The seller of the Property has declined to extend the closing date of the contract. Based on my conversations with the seller and the realtor, I understand that there have been multiple inquiries from neighbors about the Property since the public hearings on the Al Falah application.

24. I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 6, 2011

By: Zahid Chughtai
Zahid Chughtai